UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Richard A. Messina,                                    Case No. 14-cv-3101 (PAM/KMM)

                    Plaintiff,

v.                                                    **MEMORANDUM AND ORDER**

North Central Distributing, Inc.,
d/b/a Yosemite Home Décor,

                    Defendant.
_____

    This matter is before the Court on Defendant's Motion for Summary Judgment.

For the following reasons, the Motion is denied.

**BACKGROUND**

    The facts of this case would make an excellent law school final exam.  Defendant

North Central Distributing, Inc., doing business as Yosemite Home Décor ("Yosemite"),

is a national home fixture retailer and supplier headquartered in Fresno, California.

Plaintiff Richard Messina is a senior sales and marketing executive with over 20 years of

experience in the sales and marketing industry.  (Koligian Decl. (Docket No. 92) Ex. 1 at

Ex. 3.)

    After viewing Yosemite's products at a tradeshow in early August 2012, Messina

applied for a position as Yosemite's vice president of sales.  (Messina Dep. (Docket No.

98-1) at 76.)  Yosemite's Vice President Rockie Bogenschutz called Messina to discuss

potential employment after receiving his resume.  (Id. at 76-77.)  Messina followed up

that call with an email stating, among other things, that he would "need an initial contract that gives [him] a specific timeline guaranteed." (Reed Decl. (Docket No. 98) Ex. 3 at 2.)

On August 10, 2012, Messina interviewed with Yosemite in California. (Id. at 116.) Messina alleges that Bogenschutz provided Messina with a document during the interview as "a negotiation starting point." (Messina Dep. at 136.) Messina objected to the document's at-will employment provision and asked Yosemite to replace it with a provision guaranteeing him a two-year employment term. (Id. at 61, 137, 138, 147-48.) Bogenschutz's son made the requested change and provided Messina with a revised version that Messina intended to review later with his attorney. (Id. at 131, 137, 143.) The revised document is titled "Memo of Understanding" and first states, "In follow-up to recent conversations and meetings, outlined below is an initial draft for your consideration as to what your role will be with Yosemite Home Décor, and a proposed compensation plan." (Reed Aff. Ex. 6 (Docket No. 98-6) at 1.) The "Memo of Understanding" detailed the job's title (Vice President of Sales), responsibilities, work schedule, compensation ($120,000 annual salary), expectations, and term (2 years). (Id.) The only difference between the revised document and the original was that the two-year employment provision replaced the at-will employment provision. (Messina Dep. at 141; see also Reed Aff. Ex. 6 at 1.)

Later that night, Bogenschutz emailed Messina, expressed his interest in hiring Messina either part- or full-time, and stated, "I am willing to make you an offer either way. If you work with us full time we would want a contract in writing that you will

dedicate your entire time and attention to promoting Yosemite products." (Reed Decl. Ex. 4 at 2.)

The next day, Bogenschutz called Messina, offered him the job, and Messina accepted. (Id. at 144, 149.) Messina started working for Yosemite the following Monday, August 13. (Id. at 62, 149.) During his first week of employment, Messina and Yosemite continued to negotiate the terms of his employment, including commission rates. (Id. at 154-56, 159-60, 168.) On Tuesday, August 14, Messina signed an "Employee Handbook Acknowledgment" that stated, among other things, "[Messina's] employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either [Yosemite] or [Messina]." (Reed Decl. Ex. 5; Messina Dep. at 177-78, 283-84.) It went on to state that "this agreement supersedes all prior agreements, understandings and representations concerning [Messina's] employment." (Reed Decl. Ex. 5.) Messina back dated the "Employee Handbook Acknowledgment" to August 13. (Messina Dep. at 284.)

On August 18, Messina signed the "Memo of Understanding" and also back dated it to August 13. (Messina Dep. at 179, 286; Reed Decl. Ex. 6.) Messina's wife wrote "Rick Contract 8/18/12 Mailed out original" on the document and mailed it to Yosemite at that time. (Reed Decl. Ex. 6; Messina Dep. at 164.) The space where Bogenschutz was supposed to sign is left blank. (Reed. Decl. Ex. 6.) Messina also emailed Bogenschutz that day, informing him that he mailed a signed copy of what he referred to as a "contract." (Reed. Decl. Ex. 7.) Bogenschutz responded with excitement and

thanked Messina, but did not specifically refer to a 2-year term, a "contract," or the "Memo of Understanding." (Id.)

During his employment, Messina's title was Vice President of Sales and Yosemite paid him a base salary of $10,000 per month. (Messina Dep. at 186, 281.) In early February 2013, Yosemite fired Messina. (Id. at 20.)

On July 1, 2014, Messina filed this lawsuit in Minnesota state court alleging breach of contract, breach of the covenant of good faith and fair dealing, wrongful termination, unjust enrichment, promissory estoppel, and a violation of Minn. Stat. § 325E.37. (Compl. (Docket No. 1-1) ¶¶ 8-30.) Yosemite removed the case to this Court. (Notice of Removal (Docket No. 1).) Yosemite subsequently filed a motion to transfer venue and a motion to compel arbitration. (Docket Nos. 9, 37.) The Court denied both motions (Docket Nos. 31, 53), but granted a motion to stay pending Yosemite's appeal of the Court's denial of its motion to compel arbitration. (Docket No. 72.) The Eighth Circuit affirmed. Messina v. N. Cent. Distrib., Inc., 821 F.3d 1047 (8th Cir. 2016). On February 7, 2016, the parties' filed a stipulation of partial dismissal of Messina's claims for breach of the covenant of good faith and fair dealing, wrongful termination, promissory estoppel, and a violation of Minn. Stat. § 325E.37. (Docket No. 86.) Yosemite now seeks summary judgment on Messina's breach-of-contract and unjust enrichment claims.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## A.      Breach of Contract, Statute of Frauds, and Equitable Estoppel

To establish a breach-of-contract claim under Minnesota law,[1] a plaintiff must show that (1) a contract was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the contract. Carlsen v. GameStop, Inc., 833 F.3d 903, 911 (8th Cir. 2016) (quoting Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 833 (Minn. 2011)). The existence and terms of a contract are ordinarily questions of fact to be determined by the jury. Watkins Inc. v. Chilkoot Distrib., Inc., 655 F.3d 802, 805 (8th Cir. 2011) (citing Morrisette v. Harrison Int'l Corp., 486 N.W.2d 424, 427 (Minn. 1992).

The parties dispute the existence and terms of Messina's employment contract. Messina argues that the parties formed a 2-year employment contract on August 18 when he signed and mailed the "Memo of Understanding" to Yosemite. Yosemite argues that Messina mailing the "Memo of Understanding" constitutes a counteroffer that Yosemite never accepted. If the analysis ended here, summary judgment would be inappropriate.

---

[1] The parties do not dispute that Minnesota law applies.

But Yosemite also argues that the statute of frauds bars Messina's claim. When a contract cannot be fully performed within one year, Minnesota law requires that contract to be in writing and signed. Minn. Stat. § 513.01(1). Even assuming that the parties formed a two-year employment contract on August 18, the statute of frauds bars Messina's claim because Yosemite did not sign the "Memo of Understanding."

Messina counters that Yosemite should be estopped from asserting the statute of frauds. "Estoppel is an equitable doctrine addressed to the discretion of the court and is intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights." N. Petrochem. Co. v. U. S. Fire Ins. Co., 277 N.W.2d 408, 410 (Minn. 1979). A party seeking to assert the doctrine of equitable estoppel "must prove three elements: (1) that representations were made; (2) that the party reasonably relied on such representations; and (3) that it will be harmed if estoppel is not applied." EEP Workers' Comp. Fund v. Fun & Sun, Inc., 794 N.W.2d 126, 134-35 (Minn. Ct. App. 2011). A representation "may consist of silence." Id. (citation and quotations omitted). "While estoppel is ordinarily a question of fact for the jury, when only one inference can be drawn from the facts, the question is one of law." Highway Sales, Inc. v. Blue Bird Corp., 559 F.3d 782, 790 (8th Cir. 2009) (citing L & H Transport, Inc. v. Drew Agency, Inc., 403 N.W.2d 223, 227 (Minn. 1987)).

On the one hand, Messina argues that Yosemite made an affirmative representation to him when Bogenschutz told him that Yosemite would want a contract in writing before hiring him, and a representation by silence when Bogenschutz emailed Messina, thanked him for mailing the alleged contract, and gave him a title and paid him

according to the alleged contract's terms. Based on these facts, a reasonable juror could infer that Yosemite should be estopped from raising the statute of frauds.

On the other hand, Yosemite argues that it made an affirmative representation that Messina was an at-will employee through the "Employee Handbook Acknowledgment," and Messina could not have reasonably relied on a two-year employment contract because he signed the "Employee Handbook Acknowledgment." Based on these facts, a reasonable juror could infer that Yosemite should not be estopped from raising the statute of frauds.

Because more than one equitable estoppel inference can be drawn from the facts here, summary judgment is inappropriate.

## B.    Unjust Enrichment

"To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant 'in equity and good conscience' should pay." ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 306 (Minn. 1996) (citation omitted). An unjust enrichment claim may lie when "the defendants' conduct in retaining the benefit is morally wrong." Schumacher v. Schumacher, 627 N.W.2d 725, 729-30 (Minn. Ct. App. 2001) (citations omitted). Unjust enrichment is an equitable remedy that is only available when a plaintiff lacks an adequate remedy at law. United States v. Bame, 721 F.3d 1025, 1030 (8th Cir. 2013).

Yosemite first argues that Messina's unjust enrichment claim fails as a matter of law because Messina's breach-of-contract claim and the parties' arbitration agreement

constitute adequate remedies at law. Yosemite, however, fails to cite any caselaw supporting the proposition that arbitration constitutes an adequate remedy at law, and the Court did not find any such precedent. Moreover, a plaintiff is entitled to plead equitable causes of action in the alternative to legal causes of action. See Spectro Alloys Corp. v. Fire Brick Eng'rs Co., 52 F. Supp. 3d 918, 932 (D. Minn. 2014) (Montgomery, J.) ("Where a plaintiff's primary contract claim may fail to provide a legal remedy, equitable claims may be appropriate . . . . Thus, a party may simultaneously pursue equitable remedies despite the fact that it is barred from ultimately recovering at both law and equity."). Here, Messina alleges that Yosemite breached his two-year employment contract. In the alternative, if a jury determines that the parties did not form a contract, Messina alleges that Yosemite was unjustly enriched. Such an alternative theory is proper.

Finally, Yosemite argues that, regardless whether Messina has an adequate remedy at law, there is no evidence in the record that Yosemite received anything of value because Messina did not make any sales. Although Yosemite is correct that Messina was unable to identify any sales or profits attributable to him or his sales representatives during his deposition (Messina Dep. at 124-28), there is evidence in the record that Messina and his sales representatives established a relationship with Menard's Inc., that Yosemite eventually sold products to Menard's, and that Messina did not receive a commission on those sales. (Reed Decl. Ex. 9 at 53-54.) A genuine issue of material fact therefore exists regarding whether Yosemite was unjustly enriched by not paying Messina any commissions that he deserved.

**CONCLUSION**

Because genuine issues of material fact exist regarding contract formation, equitable estoppel, and unjust enrichment, summary judgment is inappropriate. Accordingly, **IT IS HEREBY ORDERED that** Yosemite's Motion for Summary Judgment (Docket No. 90) is **DENIED**.

Dated:  May 30, 2017

_s/ Paul A. Magnuson_
Paul A. Magnuson
United States District Court Judge